# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3003

_____

Jorobor Gumaneh,

            Petitioner,

      v.

Michael B. Mukasey,
Attorney General of the
United States of America,

           Respondent.

\*    Petition for Review of an
\*    Order of the
\*    Board of Immigration Appeals.

_____

Submitted: June 9, 2008
Filed: August 1, 2008

_____

Before SMITH, BOWMAN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Jorobor Gumaneh, a citizen of the Republic of The Gambia, petitions for review of a Board of Immigration Appeals ("BIA") decision affirming the immigration

judge's ("IJ") denial of her application for asylum and withholding of removal.[1] For the reasons discussed below, we deny Gumaneh's petition.

## I. BACKGROUND

Gumaneh entered the United States on December 29, 1999, as a visitor with authorization to remain until March 28, 2000. She overstayed her visa and, while residing in the United States, gave birth to two daughters and one son between 2000 and 2002.

Gumaneh had been subjected to female genital mutilation ("FGM") while living in The Gambia. During a telephone call in February 2003, Gumaneh's parents informed her that she needed to return to The Gambia with her two daughters so that they could be subjected to FGM. After this phone call, Gumaneh feared returning to The Gambia with her children. In a September 2003 letter and in a November 2003 letter, her family continued to request that Gumaneh bring her daughters to The Gambia for FGM.

Gumaneh filed an asylum application with the Department of Homeland Security on April 1, 2004, which was referred for a hearing before an IJ. On December 5, 2005, the IJ denied her application for asylum and withholding of removal but granted her request for voluntary departure. The IJ concluded that her asylum application was untimely because she failed to file within one year of her arrival. While the IJ accepted that Gumaneh experienced changed circumstances that would excuse a late filing, the IJ concluded that Gumaneh failed to file within a reasonable period after the changed circumstances. First, the birth of her two

---

[1]The IJ and BIA also rejected Gumaneh's claim for protection under the Convention Against Torture ("CAT"). She has not set forth an argument on appeal regarding the CAT ruling. Therefore, Gumaneh waives this claim. *See Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004).

daughters in 2000 and 2001 put Gumaneh on notice, in light of her past experience, that they could be subjected to FGM when she returned to The Gambia, and her failure to file within a reasonable period of time—filing more than three years later—rendered her petition untimely. Second, assuming that the births of her daughters were insufficient to put her on notice of changed circumstances, the telephone call in February 2003 requesting that her daughters undergo FGM put Gumaneh on notice, and she failed to apply within a reasonable period, given that more than one year elapsed between the phone call and Gumaneh's filing for asylum. Finally, even assuming that the phone call was insufficient to put her on notice, Gumaneh still waited seven months to file for asylum after receiving the September 2003 letter from her family.

The IJ also determined that Gumaneh was not entitled to withholding of removal based upon the fact that her daughters would be subjected to FGM because the statutory provisions regarding withholding of removal did not permit an applicant to assert a claim derived from a child's fear of future persecution. The IJ also rejected Gumaneh's derivative claim because her daughters were United States citizens and were not compelled to go to The Gambia.

On July 31, 2007, the BIA concurred in the IJ's conclusions and adopted the IJ's opinion. Gumaneh filed a motion to reconsider on September 10, 2007, relying upon our decision in *Hassan v. Gonzales*, 484 F.3d 513 (8th Cir. 2007), for the proposition that an applicant for withholding of removal may make a derivative claim based upon the claim that the applicant's daughters would be subjected to FGM if the applicant were to be removed. The BIA rejected the proposition that *Hassan* recognized such a derivative claim and denied the motion to reconsider. Gumaneh now petitions for review.

## II. DISCUSSION

"When the BIA adopts and affirms the IJ's decision, but also adds reasoning of its own, we will review both decisions together." *Chen v. Mukasey*, 510 F.3d 797, 800 (8th Cir. 2007). We affirm the decisions if they are supported by substantial evidence in the record. *Singh v. Gonzales*, 495 F.3d 553, 556 (8th Cir. 2007). We review questions of law de novo, and we reverse findings of fact only if the evidence is "so compelling that no reasonable fact finder could fail to find in favor of the petitioner." *Turay v. Ashcroft*, 405 F.3d 663, 666–67 (8th Cir. 2005).

### A. Asylum

An applicant must file for asylum within one year of arrival, which Gumaneh failed to do. *See* 8 U.S.C. § 1158(a)(2)(B). There are two exceptions to this rule: an applicant may demonstrate "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the [one-year] period." *Id.* § 1158(a)(2)(D). If an applicant contends that changed circumstances affect her eligibility, the applicant must file an application "within a reasonable period given those 'changed circumstances.'" 8 C.F.R. § 208.4(a)(4)(ii).

"Congress has expressly precluded judicial review of the Attorney General's determination that an asylum application is untimely." *Somakoko v. Gonzales*, 399 F.3d 882, 883 (8th Cir. 2005); *see* 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."). This preclusion extends to the IJ's determination that an applicant has not filed within a reasonable period given the changed circumstances. *See Fang Huang v. Mukasey*, 523 F.3d 640, 651 (6th Cir. 2008) (determining that the court lacked jurisdiction to determine whether the application had been filed within a "reasonable period" given changed circumstances); *Haddad v. Gonzales*, 437 F.3d 515, 519 n.7

(6th Cir. 2006) (same); *see also Awad v. Gonzales*, 463 F.3d 73, 76 (1st Cir. 2006) (finding no jurisdiction to review conclusion that asylum application was not filed within a "reasonable period" of the onset of extraordinary circumstances). Therefore, we lack jurisdiction to review the BIA's determination that Gumaneh's asylum application was untimely.

### B.    Withholding of Removal

"An alien may not be removed if the alien shows there is a clear probability [her] 'life or freedom would be threatened in [the alien's] country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.'" *Guled v. Mukasey*, 515 F.3d 872, 881 (8th Cir. 2008) (quoting 8 U.S.C. § 1231(b)(3)(A)) (second alteration in original). To establish withholding of removal, Gumaneh must show that "it is more likely than not that [she] would be subject to persecution." *See Abrha v. Gonzales*, 433 F.3d 1072, 1076 (8th Cir. 2006) (quotation omitted).

Relying on our opinion in *Hassan*, Gumaneh argues that she has a claim that derives from the likelihood that her daughters would be subjected to FGM if she takes them with her to The Gambia. Gumaneh asserts that this derivative claim is sufficient to establish a clear probability of persecution and makes her eligible for withholding of removal.

In *Hassan*, we concluded that an asylum applicant who suffered FGM has satisfied her burden of showing that she suffered past persecution entitling her to a presumption that she has a well-founded fear of future persecution. 484 F.3d at 518. The IJ refused to address Hassan's derivative claim after determining that her United States citizen daughters could remain in the United States with their father. *Id.* at 519. After the hearing, the father was removed from the United States. We did not address whether an asylum applicant may establish a derivative claim of persecution based

-5-

upon the fact that her daughters would experience FGM, choosing instead to remand the case for reconsideration in light of the IJ's inaccurate assumption that the children could remain with their father. *Id.* We now consider, for the first time, whether a parent may bring a derivative claim for withholding of removal based upon the fact that her children would be subjected to future persecution.

Other circuits that have considered this question agree that a parent cannot assert a derivative claim based upon a child's possible future persecution. *See Niang v. Gonzales*, 492 F.3d 505 (4th Cir. 2007); *Oforji v. Ashcroft*, 354 F.3d 609 (7th Cir. 2003). In *Niang*, the Fourth Circuit considered the petition of an applicant who claimed that her United States citizen daughter would be subjected to FGM if she were taken to Senegal. 492 F.3d at 512–13. The applicant sought withholding of removal based upon her daughter's future persecution. In order to be eligible for withholding of removal under the statute, 8 U.S.C. § 1231, an application must show that "*the alien's* life or freedom would be threatened." *Id.* at 513 (emphasis in original) (quoting 8 U.S.C. § 1231(b)(3)(A)). "Thus, the statute permitting withholding of removal does not encompass derivative withholding claims, that is, claims for withholding of removal based on persecution to another person . . . ." *Id.* The Fourth Circuit acknowledged that if an applicant has resided in the United States for ten years, she might meet the exception in 8 U.S.C. § 1229b that examines "exceptional and extremely unusual hardship to the alien's . . . child," which would permit a court to consider a child's future FGM in its hardship analysis. *See* 8 U.S.C. § 1229b(b)(1)(D). The applicant in *Niang*, however, did not meet the statutory requirements for the exception. *See Niang*, 492 F.3d at 513. Therefore, the Fourth Circuit concluded, "[T]here is simply no statutory or regulatory authority for her to claim withholding of removal based on threatened hardship to her U.S. citizen minor daughter. As Congress has not provided for such a derivative withholding claim, we will not judicially amend the statute to create one." *Id.*; *accord In re A-K-*, 24 I. & N. Dec. 275 (B.I.A. 2007) (relying on *Niang*).

The Seventh Circuit reached a similar conclusion in *Oforji*. There, an applicant sought to assert a derivative claim for withholding of removal under the Convention Against Torture ("CAT"). *Oforji*, 354 F.3d at 614–15. The regulations at issue required that in "an application for withholding of removal under [the CAT], the immigration judge shall first determine whether *the alien* is more likely than not to be tortured . . . ." *Id.* at 615 (emphasis in original) (quoting 8 C.F.R. § 208.16(c)(4)). The regulations did not provide for a derivative claim based upon the fact that the applicant's two daughters would be subjected to FGM. In particular, the court in *Oforji* noted that the two daughters who would be subjected to FGM if taken to Nigeria were United States citizens. *Id.* at 616. The Seventh Circuit concluded, "[A]n alien parent who has no legal standing to remain in the United States may not establish a derivative claim [under the CAT] by pointing to potential hardship to the alien's United States citizen child in the event of the alien's deportation." *Id.* at 618.

We conclude that an applicant may not establish a derivative claim for withholding of removal based upon the applicant's child's fear of persecution. The withholding of removal statute simply does not allow an applicant to maintain such a derivative claim.[2] We agree with the thorough analysis of the Fourth Circuit that withholding of removal is specifically limited to instances in which "*the alien's* life or freedom would be threatened." 8 U.S.C. § 1231(b)(3)(A) (emphasis added). In addition, Gumaneh does not contend that she qualifies for any exception under § 1229b, perhaps because she cannot establish the required ten years of residency in the United States. *See* 8 U.S.C. § 1229b(b)(1)(A).

---

[2]Unlike withholding of removal claims, the asylum statutes do provide for some limited derivative claims. A spouse or a child of an applicant may also be granted asylum by a derivative claim based upon a spouse's or a parent's claim. 8 U.S.C. § 1158(b)(3). A parent of an applicant, however, cannot maintain a derivative asylum claim based upon a child's claim. 8 C.F.R. § 207.7(b). The derivative claims recognized in the asylum statute are not included in the withholding of removal statute. *See* 8 U.S.C. § 1231. Even if they were, the statutory derivative claims do not extend to parents. *See Niang*, 492 F.3d at 512 n.11.

We recognize that Gumaneh is faced with an extremely difficult decision: leave her U.S. citizen minor daughters in the United States to reside with friends or relatives, or take her daughters to The Gambia and risk the possibility that they will be subjected to FGM. The IJ also recognized that her daughters could live with their father, who now resides in Sierra Leone, presuming that the daughters would be free from FGM there. Despite this difficult choice, under the statutes as presently enacted, Gumaneh is not eligible for withholding of removal based upon a derivative claim that her daughters will be subjected to FGM.[3]

## III.   CONCLUSION

For the foregoing reasons, we deny Gumaneh's petition for review.

————————————————————————

[3]The Sixth Circuit has concluded that an applicant may be eligible "in her own right," not derivatively, based on psychological harm on account of her own fear that her non-citizen daughter would be subject to FGM. *Abay v. Ashcroft*, 368 F.3d 634, 641 (6th Cir. 2004). *But see Niang*, 492 F.3d at 512 (criticizing *Abay*). Gumaneh, however, does not argue that she is eligible for withholding of removal based upon any psychological harm to herself, and we decline to address this issue. *See Alyas v. Gonzales*, 419 F.3d 756, 760 (8th Cir. 2005).